IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **MORRIS CARTER**, on behalf of himself and all others similarly situated, <br><br> Plaintiff <br><br> *versus* <br><br> **CREDITREPAIR.COM, LLC**, a Delaware Limited Liability Company <br><br> Defendant, <br><br> And <br><br> **OQUIRRH MOUNTAIN LAW GROUP, P.C.** d/b/a **LEXINGTON LAW FIRM** a Utah Professional Corporation <br><br> Defendant, | §§§§§§§§§§§§§§§§§ | **Civil Action No.** 3:25-CV-20 <br><br><br> **DEMAND FOR CLASS ACTION** <br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

### INTRODUCTION

MORRIS CARTER (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants CREDITREPIAR.COM, LLC (hereinafter "CR") and OQUIRRH MOUNTAIN LAW GROUP, P.C. d/b/a LEXINGTON LAW FIRM (hereinafter "Lexington") to stop their illegal practice of placing unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA") and Texas Business and Commerce Code 302.101 (hereinafter "TBCC"). Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants CR and Lexington. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorney.

### PARTIES

1. Plaintiff is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Plaintiff may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

3. Defendant CR is a limited liability company organized and existing under the laws of Delaware with its principal address at 257 E 200 South, Suite 1200, Salt Lake City, Utah 84111

and can be served via its Texas registered agent C T Corporation System at 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

4. Defendant Lexington is a professional corporation organized and existing under the laws of Utah with its principal address at 257 E 200 South, Suite 1000, Salt Lake City, Utah 84111 and can be served via its registered agent John Heath at 257 E 200 South, Suite 1000, Salt Lake City, Utah 84111.

5. Defendants CR and Lexington are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

6. This action is brought by Plaintiff pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiffs TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012).

8. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Defendants sent its illegal telemarketing calls to a telephone number in this District. Furthermore, Defendants do continuous and systematic business in this District by selling its services into this District.

9. This Court has general personal jurisdiction over the Defendants as they placed unsolicited calls to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the Texas Business and Commerce Code form part of the same case or controversy as Plaintiff's claims under the TCPA.

11.     Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claims alleged herein occurred within the Western District of Texas.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a natural person who resides in this District.

13.     Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Plaintiff's telephone number (XXX) XXX-1665 is a residential number.

15.     Plaintiff's telephone number (XXX) XXX-1665 is used for personal purposes and is not associated with business.

16.     Upon information and belief, Defendant CR offers credit restoration services to consumers nationwide, including Texas. *See* https://www.creditrepair.com.

17.     Upon information and belief, Defendant Lexington offers credit restoration services to consumers nationwide, including Texas. *See* https://www.lexingtonlaw.com.

18.     Upon information and belief, Defendant CR is owned and operated by Jared Hartley.

19.     Upon information and belief, Defendant Lexington is owned and operated by John Heath.

20.     According to Utah's business registration website, https://businessregistration.utah.gov as of June 23, 2004, John Heath registered as the owner of the assumed name Lexington Law Firm.

21.     Defendants CR and Lexington operate as a common enterprise.

22.     Defendant Lexington is barred by ethics from making direct solicitation phone calls to consumers with whom no preexisting relationship exists.

23.      As part of their marketing campaign, and to generate business for this common enterprise, Defendant CR sends ringless voicemails using an artificial or prerecorded voice to thousands of consumers residential telephone numbers without obtaining the consumers' consent soliciting Defendants CR and Lexington's services.

24.     A ringless voicemail is a technology that allows users to send a voicemail message to a recipient's voicemail without ringing their phone.

25.     On November 21, 2022, the Federal Communications Commission ("FCC") ruled that ringless voicemails are subject to the TCPA and require consumer consent.

26.     The FCC found that ringless voicemails are "calls" made using an artificial or prerecorded voice.

27.     Defendant CR's affiliate company Creditrepair.com, Inc. has been sued on at least one occasion for violating the TCPA, *Forrest v. CreditRepair.com, Inc*., No. 0:19-cv-61930-WPD (S.D.FL., July 31, 2019).

28.      Lexington Law's assumed name was also sued on at least one occasion for violating the TCPA, Johnson v. Lexington Law Firm, No. 2:13-cv-02377-MCE-AC (E.D.CA., Nov. 15, 2013).

29.     Upon information and belief, Defendants CR and Lexington have generated substantial profit gains from illegal telemarketing.

30.     On the same day, September 10, 2023, Plaintiff received two ringless voicemails to his telephone ending in -1665 from Defendant CR.

31. When Plaintiff played the ringless voicemails he received from Defendant CR, Plaintiff heard the same artificial or prerecorded voice that stated,

> "Hello, this is creditrepair.com we want to give you a second chance with your financial future. Whether that means we go over whatever options you have for a new account with us or if you have an outstanding balance we are willing to waive that to start a new chapter with you and your credit score. Call 800-798-1750 to get started. Whatever your situation, we want to find the best way to get you closer to your credit goals. Give us a call at 800-798-1750 to see what we can do for you today. If you do not wish to receive these offers, please call 888-586-1064."

32. The ringless voicemails Plaintiff received from Defendant CR were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

33. The ringless voicemails Plaintiff received from Defendant CR left the same call back phone number for Plaintiff to call back (800) 798-1750.

34. The ringless voicemails Plaintiff received from Defendant CR also leaves an additional call back phone number (888) 586-1064 if the recipient wishes not to receive Defendants offers.

35. Plaintiff became aggravated and annoyed by the ringless voicemails he received from Defendant CR.

36. On February 26, 2024, Plaintiff searched phone number (888) 586-1064 and was routed to Defendant CR's website https://www.creditrepair.com.

37. As part of Plaintiff's investigation, On February 26, 2024, Plaintiff called back the other phone number left in the ringless voicemails Plaintiff received from Defendant CR, (800) 798-1750.

38. Plaintiff was connected to an artificial or prerecorded voice that stated,

> Thanks for calling Lexington law firm. We recently transitioned to a digital first service to better assist our clients please download our mobile app or visit us online at lexingtonlaw.com to learn more. Thank you.

39. The artificial or prerecorded voice identifies Defendant Lexington.

40. The ringless voicemails Plaintiff received from Defendant CR were an attempt to solicit Plaintiff for both Defendants CR and Lexington services.

41. Upon information and belief, Plaintiff has received additional unsolicited calls from or on behalf of Defendants CR and Lexington that are unknown to Plaintiff at this time and will be revealed through discovery.

42. Upon information and belief, Defendants CR and Lexington employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

43. Upon information and belief, neither Defendants CR nor Lexington has a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through their agents.

44. Plaintiff is a Texas resident.

45. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither of Defendants registration.

46. Neither Defendants CR nor Lexington qualify for an exemption under § 302.053.

47. Plaintiff never provided his prior express written consent to receive any of the alleged calls.

48. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

49. Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

50. Upon information and belief, the alleged calls were placed without the Defendants training their agents on the use of an internal do-not-call policy.

51. Plaintiff has never been a customer of Defendants and never knew who Defendants were prior to receiving the alleged calls.

52. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because his privacy was improperly invaded. Moreover, the alleged calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

**BASIS FOR LIABILITY**

53. Plaintiff reallege paragraphs one through fifty-two and incorporates them herein as if set forth here in full.

54. Even if Defendant Lexington did not personally make the TCPA violating calls to Plaintiffs, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

**ACTUAL AUTHORITY**

55. Plaintiff reallege paragraphs one through fifty-four and incorporates them herein as if set forth here in full.

56. Defendant Lexington contracted with Defendant CR to generate prospective customers through illegal telemarketing calls.

57. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re

Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

58.     In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

59.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

60.     Defendant CR sent unsolicited calls to Plaintiffs on behalf of Defendant Lexington. Accordingly, Defendant CR had Defendant Lexington's actual authority to solicit Plaintiffs through illegal telemarketing calls.

**APPARENT AUTHORITY**

61.     Plaintiff realleges paragraphs one through sixty and incorporates them herein as if set forth here in full.

62.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the

TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

63. Defendant Lexington authorized Defendant CR to generate prospective business for them through illegal telemarketing.

64. Defendant CR sent unsolicited calls to Plaintiff on behalf of Defendant Lexington. The integration of Defendant CR's sales efforts was so seamless that it appeared to Plaintiff that all Defendants all appeared to be acting together as the same company.

65. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that Defendant CR had received permission to sell, market, and solicit services of Defendant Lexington.

66. As a direct and proximate result of Defendant CR's illegal phone calls – which were made on behalf of and with the apparent authority of Defendant Lexington, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

**RATIFICATION**

67. Plaintiff reallege paragraphs one through sixty-six and incorporates them herein as if set forth here in full.

68. Defendant Lexington knowingly and actively accepts business that originates through the illegal calls placed by Defendant CR.

69. By accepting these contacts and executing contracts with the robocall victims, Defendant Remanifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant Lexington, as described in the Restatement (Third) of Agency.

70. Defendant Lexington received new customers and the possibility of new business.

71. Defendant Lexington ratifies Defendant CR's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

72. Defendant Lexington further ratified Defendant CR's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

73. As a direct and proximate result of Defendant CR's illegal phone calls, Plaintiff and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## CLASS ALLEGATIONS

74. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

**TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendants called and/or any entity making calls on behalf of Defendants

**Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called and/or any entity any entity making calls on behalf of Defendants

75. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

76.     **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants' have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

77.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited calls.

78.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

79.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply

to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

80. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the unsolicited calls were caused by the Defendants;
   b. Whether the unsolicited calls promoted the Defendants' products or services;
   c. Whether the Defendants obtained written express consent prior to sending the calls;
   d. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendants' conduct.

81. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## LOCAL RULES

82. Plaintiff, pursuant to local rules, shall move to certify this complaint as a Class Action.

83. Plaintiff will reidentify the classes, exclusions of the classes, numerosity, typicality, adequacy of representation, generality, commonality, predominance, and superiority in Plaintiffs 'Motion to Certify.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

84. Plaintiff realleges paragraphs one through eighty-three and incorporates them herein as if set forth here in full.

85. The alleged calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

86. The alleged calls harmed Plaintiff by trespassing upon and interfering with his rights and interests in his cellular telephone.

87. The alleged calls harmed Plaintiff by intruding upon his seclusion.

88. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone. frequent charging of his cell phone.

### FIRST CAUSE OF ACTION:
### VIOLATION OF 47 U.S.C. § 227(B)

**ARTIFICIAL OR PRERECORDED VOICE**
**(ON BEHALF OF ALL CLASS – AGAINST ALL DEFENDANTS)**

89. Plaintiff realleges paragraphs one through eighty-eight and incorporates them herein as if set forth here in full.

90. Defendants' and/or their agents placed telephone calls to Plaintiff's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

91. The calls were made for the express purpose of soliciting customers for Defendants' goods and services.

92. When Plaintiff and the Class answered and/or listened to their voicemails, the calls played an artificial or prerecorded voice to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

93. As a result of its unlawful conduct, Defendants' repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring the Defendants to stop its illegal calling campaign.

94. Defendants' and/or its agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

95. If the court finds that the Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION:**
**VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101**
**FAILURE TO OBTAIN A TELEPHONE SOLICITATION REGISTRATION CERTIFICATE**
**(ON BEHALF OF PLAINTIFF AND THE TEXAS SUBCLASS- AGAINST ALL DEFENDANTS)**

96. Plaintiff realleges paragraphs one through ninety-five and incorporates them herein as if set forth here in full.

97. Defendants' and/or their agents placed illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation certificate as required under Tex. Bus. Com. Code 302.101.

98. Upon information and belief, the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

99. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

100. Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

101. As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

102. As a result of the Defendants' violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

   **WHEREFORE**, Plaintiff Morris Carter, individually and on behalf of the Class prays for the following relief:

   A. An order declaring that the Defendants' actions, as set out above, violate 227(b) of the TCPA;

B. An order declaring that the Defendants' actions, as set out above, violate 227(b) willfully and knowingly;

C. An award of $500.00 per call in statutory damages arising from the TCPA §227(b) for each violation;

D. An award of $1,500.00 per call in statutory damages arising from the TCPA §227(b) for each intentional violation;

E. An order declaring that the Defendants' actions, as set out above, violate Texas Business and Commerce Code 302.101;

F. An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

G. An injunction requiring the Defendants' to cease sending all unlawful calls;

H. An award of reasonable attorneys' fees and costs; and

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 20th day of January 2025.

                                                  Respectfully Submitted,

                                                  The Darwich Law Firm, LLC
                                                    /Omar F. Darwich/ _____
                                                  Omar F. Darwich
                                                  Tx Bar No. 24124686
                                                  6090 Surety Dr, #305
                                                  El Paso, TX 79905
                                                  (915) 671-2221
                                                  omar@darwichlegal.com

                                                  **ATTORNEYS FOR PLAINTIFF**